J-A19008-25

2025 PS Super 247

| | | |
|---|---|---|
| NATALIE PIERCE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| FLOATME CORP. | : | No. 1310 WDA 2024 |

Appeal from the Order Entered September 23, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-24-002169

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:                    **FILED: November 4, 2025**

Appellant, FloatMe Corp. ("FloatMe"), appeals from the trial court's order overruling its preliminary objections to compel arbitration.  We affirm.

After FloatMe had filed preliminary objections to the original complaint, Appellee, Natalie Pierce, individually and on behalf of all others similarly situated, filed an amended class action complaint against FloatMe on June 3, 2024.  Therein, Ms. Pierce alleged, *inter alia*, the following: FloatMe is a technology company that makes loans or advances to Pennsylvania consumers over the internet.  Amended Complaint, 6/3/24, at ¶¶ 10, 12.  It has a lending application (hereinafter, "app") where consumers can obtain advances of up to $50.00.  ***See id.*** at ¶¶ 16-18.  Users must pay a $3.99 monthly subscription fee to obtain any type of advance, and an express fee that ranges from $3.00-$5.00 for an immediate advance.  ***Id.*** at ¶¶ 25-27.  These fees are intended to compensate FloatMe for lending money.  ***Id.*** at ¶

28. Nevertheless, FloatMe advertises its cash advance product as free credit and no interest. *Id.* at ¶ 36. In actuality, a $20.00 cash advance, with a two-week repayment schedule, a $5.00 express fee, and a $3.99 monthly fee yields a 1,302.27% annual percentage rate ("APR"). *See id.* at ¶ 38; *see also id.* at ¶ 39 (stating that a $30.00 cash advance with the same charges yields an 868.18% APR); *id.* at ¶ 40 (stating that a $50.00 cash advance with the same charges yields a 520.91% APR).

Users must connect a bank account and payment card to obtain an advance and — before obtaining an advance — FloatMe analyzes users' bank account history with proprietary underwriting criteria, which ensures that they have a recurring source of income directly deposited into their linked bank account. *See id.* at ¶¶ 19-21. FloatMe also requires its users to authorize FloatMe to automatically deduct its advances from the user's bank account or payment card immediately after the user's employer deposits a paycheck into the user's account on payday. *Id.* at ¶ 30. Via FloatMe's underwriting criteria, FloatMe's obligation that borrowers link their accounts and payment cards to FloatMe's app, and FloatMe's requirement that users authorize FloatMe to deduct its cash advances and fees from bank accounts on payday, FloatMe obtains repayment on the vast majority of advances it issues. *Id.* at ¶ 33.

Ms. Pierce obtained cash advances from FloatMe, and paid FloatMe's express and monthly fees. *Id.* at ¶¶ 82-83. She did not know that she was paying interest by paying fees, and that the amounts she paid yielded triple- and quadruple-digit APRs. *Id.* at ¶¶ 82-86. She brought this action

- 2 -

individually and on behalf of all persons who reside in Allegheny County and obtained an advance or loan from FloatMe within the statute of limitations. *Id.* at ¶¶ 113-14. She claimed that FloatMe violated the Loan Interest and Protection Law, 41 P.S. § 101, *et seq.*, and the Consumer Discount Company Act, 7 P.S. § 6201, *et seq.*, by collecting charges prohibited and in excess of those allowed by these statutes. *See id.* at ¶¶ 123-33.

FloatMe subsequently filed preliminary objections, seeking to compel arbitration based on a purported agreement for alternative dispute resolution. *See* Pa.R.Civ.P. 1028(a)(6) (stating that preliminary objections may be filed on the grounds of an agreement for alternative dispute resolution). In support of its preliminary objections, FloatMe attached an affidavit from Josh Sanchez, FloatMe's chief executive officer ("Sanchez Affidavit"). FloatMe conveyed, among other things, that Ms. Pierce signed up for FloatMe's services on July 8, 2022, and — during the sign-up process on FloatMe's app — Ms. Pierce was prompted to enter her phone number. *See* Preliminary Objections to Ms. Pierce's First Amended Class Action Complaint, 6/24/24, at ¶¶ 6, 10; *id.* at Sanchez Affidavit at ¶ 8. FloatMe claimed that, at the bottom of the screen requesting her phone number, the app provided: "By continuing, you agree to FloatMe's Terms of Service and Privacy Policy." *Id.* at ¶ 11. FloatMe stated that a true and accurate copy of FloatMe's app screens described in its preliminary objections were attached to the Sanchez Affidavit. *Id.* A review of the app screen containing the Terms of Service shows the following:



*Id.* at Sanchez Affidavit at Exhibit A at unnumbered 2 ("Sanchez Affidavit Account Sign-up Screens").

FloatMe claimed that the 'Terms of Service' phrase is clickable and directs the users to an online format of FloatMe's Terms and Conditions. *Id.* at ¶ 15.[1] According to FloatMe, the Terms and Conditions include an arbitration provision and class action waiver. *See id.* at ¶¶ 19-22. FloatMe says that the Terms and Conditions also specify that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs arbitration disputes, and that Texas

---

[1] Though the link on the app is entitled 'Terms of Service,' and the agreement is entitled 'Terms and Conditions,' both refer to the same agreement.

law governs all claims, without regard to conflict-of-law rules. *Id.* at ¶¶ 23, 27; *see also id.* at Sanchez Affidavit at Exhibit B ("Terms & Conditions").

Based on the foregoing, FloatMe argued that notice was provided to Ms. Pierce of the existence of the Terms and Conditions, containing an arbitration provision, through its sign-up process, which was required for any user to obtain an advance. *See id.* at ¶ 36. FloatMe also contended that Ms. Pierce's claims are within the scope of the arbitration provision. *Id.* at ¶ 37. As such, FloatMe insisted that the trial court should sustain FloatMe's preliminary objections and compel Ms. Pierce to separately arbitrate her claims with FloatMe. *Id.* at ¶ 42.

Following FloatMe's preliminary objections, Ms. Pierce filed a response and memorandum of law in opposition. Therein, she argued, *inter alia*, that Mr. Sanchez failed to state in his affidavit that the sign-up screens attached to his affidavit were in effect when Ms. Pierce signed up for FloatMe's app on July 8, 2022. *See* Ms. Pierce's Memorandum of Law in Opposition, 7/24/24, at 3, 5; *see also id.* at 5 ("FloatMe's affiant affirmatively states that the contract attached to its preliminary objections[, *i.e.*, the Terms and Conditions,] was in effect on 'the date on which [Ms. Pierce] signed up[.]' But the affiant makes no such affirmative representation with respect to the screens attached to the affiant's declaration. Without this type of evidence, the [c]ourt cannot assume that any of the screens displayed to [Ms.] Pierce included a notice that linked to an arbitration contract.") (citations omitted). Ms. Pierce contended that the sign-up screens attached by FloatMe to its

preliminary objections were revised and updated in September 2022, which would have been **after** Ms. Pierce signed up on the app. **See id.** at 6 n.2. In addition, she stated that, pursuant to **Chilutti v. Uber Techs., Inc.**, 300 A.3d 430 (Pa. Super. 2023) (*en banc*), *appeal granted*, 325 A.3d 446 (Pa. 2024), Ms. Pierce cannot be deemed to have waived her constitutional right to a jury trial because certain notice required by Pennsylvania law was not given to her. **See id.** at 7. Moreover, even if Texas law applied, Ms. Pierce argued that FloatMe failed to provide reasonably conspicuous notice of its Terms of Service, and that FloatMe presented the notice at a point in the transaction where users were not expecting to agree to contractual terms. **Id.** at 13-17.

FloatMe subsequently filed a reply. FloatMe argued, among other things, that Ms. Pierce cannot claim that she did not have notice of FloatMe's Terms and Conditions when the Terms and Conditions were posted at all times on FloatMe's website, and it contended that Ms. Pierce had to agree to the Terms and Conditions prior to accessing any of FloatMe's services. FloatMe's Reply in Support of Preliminary Objections, 8/14/24, at 2, 7-8. FloatMe pointed out that Ms. Pierce did not argue that the sign-up screens she was shown lacked a link to the Terms and Conditions, or differed from those attached to the Sanchez Affidavit. **Id.** at 8. FloatMe also maintained that Texas law applies where the parties agreed it would apply and, under Texas law, the sign-up screens provided reasonably conspicuous notice of the existence of the Terms and Conditions and were presented when a user would need to decide whether to continue to the next screen to obtain services. **See**

*id.* at 3-9.  Further, to the extent Pennsylvania law applies, FloatMe said this Court's *en banc* decision in **Chilutti** has been questioned and is currently pending review before our Supreme Court.  **See id.** at 9-11.

The trial court held oral argument on the preliminary objections on September 20, 2024.  On September 23, 2024, the trial court entered an order overruling FloatMe's preliminary objections.  On October 22, 2024, FloatMe filed a timely notice of appeal.  **See** Pa.R.A.P. 311(a)(8) (stating that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties"); **MacPherson v. Magee Memorial Hosp. for Convalescence**, 128 A.3d 1209, 1213 n.4 (Pa. Super. 2015) (*en banc*) ("An order refusing to compel a case to arbitration is a threshold, jurisdictional question, that is appealable as an exception to the general rule that an order overruling preliminary objections is interlocutory and not appealable as of right.") (citations omitted).  That same day, the trial court directed FloatMe to file a Pa.R.A.P. 1925(b) concise statement, and it timely complied.

On December 2, 2024, FloatMe filed an unopposed motion for stay pending appeal with the trial court.  The trial court granted the motion the next day, and stayed the case pending resolution of FloatMe's appeal.

On December 19, 2024, the trial court issued a Rule 1925(a) opinion.  Therein, the trial court explained that, "[w]hether it is Texas or Pennsylvania law that is applicable, the meeting of the minds or mutual assent required by Texas and Pennsylvania for an agreement to arbitrate and waive class action

lawsuits is lacking." Trial Court Opinion ("TCO"), 12/19/24, at 2. Under Texas law, the trial court did not find the 'Terms of Service' hyperlink was reasonably conspicuous. *Id.* at 3. The trial court observed that the 'Terms of Service' hyperlink, "while pink in color, is not underlined or in all capital letters and its font is smaller than the other words on the screen." *Id.* (citation omitted). It also noted that "the 6 words proceeding it, '[B]y continuing, you agree to FloatMe's[…,]' are gray and set on a black background, making the entire sentence unlikely to draw the attention of a reasonably prudent smartphone user." *Id.* (citation omitted). It also ascertained that, under Texas law, Ms. Pierce's assent to FloatMe's Terms and Conditions was not unambiguous, explaining that FloatMe's app "uncouples the mechanism for manifesting assent from enrollment. Ms. Pierce touched 'Continue' to allegedly agree to Float[M]e's Terms of Service during the initial stage of the enrollment process and needed to provide information on at least seven additional screens before she was enrolled." *Id.*

Under Pennsylvania law, the trial court likewise determined that notice of FloatMe's Terms and Conditions was not reasonably conspicuous for the same reasons it provided under Texas law. *Id.* at 4. Regarding the manifestation-of-assent requirement, the trial court discerned that Pennsylvania imposes a stricter burden of proof than Texas, and that there was no unambiguous assent manifested by Ms. Pierce under current Pennsylvania law, as FloatMe's app screen "does not explicitly state that a consumer is waiving a right to a jury trial and the waiver does not appear at

the top of the first page of FloatMe's [T]erms and [C]onditions…." *Id.* (citing *Chilutti*, *supra*).

The trial court record was received by this Court on January 17, 2025. In FloatMe's appellate brief, originally filed on April 4, 2025 and amended on May 15, 2025, FloatMe conveyed that it had filed a "Notice of Correction to Record" in the trial court while this appeal was pending. Specifically, it explained:

> On February 19, 2025, FloatMe filed a notice of correction to record in the trial court, attaching an amended affidavit of Josh Sanchez in support of the preliminary objections [("Amended Sanchez Affidavit")]. FloatMe made that submission because, as explained in the notice, it learned that the screenshots displayed to [Ms. Pierce] in the sign-up process were slightly, but immaterially, different from the screenshots attached to the Sanchez Affidavit. The amended affidavit includes screenshots of the screens that were displayed to [Ms. Pierce]. While the differences were minimal and non-material, FloatMe acted to correct the record and to ensure that [Ms. Pierce] had the opportunity to make arguments in support of her position based on the correct screenshots.

FloatMe's Amended Brief at 7 n.3 (citations omitted; some capitalization altered). FloatMe references the screenshots attached to the Amended Sanchez Affidavit in its brief and includes them in the reproduced record, in addition to discussing the Sanchez Affidavit and its attached screenshots. *See, e.g.*, *id.* at 8-9, 22-24, 26-28, 32-33; FloatMe's Reply Brief at 9-11. It also notes that the Terms of Service attached to the Sanchez Affidavit and the Amended Sanchez Affidavit are identical. FloatMe's Amended Brief at 7 n.4.

In Ms. Pierce's brief, filed on May 5, 2025, she complains that FloatMe presented "an entirely different set of screenshots with a 'notice of

correction…,' which was filed five months after the trial court ruled against FloatMe and four months after FloatMe filed this appeal[.]" Ms. Pierce's Brief at 6 (citations omitted). She observes that "[t]he trial court obviously could not consider the new screenshots — because they were filed five months after the trial court overruled FloatMe's preliminary objections[,]" and claims that "the new set of screenshots FloatMe filed, just like those filed with FloatMe's preliminary objections, were introduced using an affidavit that failed to state that the new screenshots applied to [Ms.] Pierce or that they were shown to her." *Id.* at 8 (citations omitted). According to Ms. Pierce, "FloatMe was required to file the screens that would have been shown to [her], so that the trial court could decide whether those screens provided sufficient notice of an arbitration agreement." *Id.* at 10. However, she says "the screens that were filed with FloatMe's preliminary objections did not apply to [Ms.] Pierce, as FloatMe failed to produce any testimony or other evidence to show that those screens were presented to her[,]" and she discerns that "FloatMe all but concedes this, as FloatMe recently filed a notice claiming [Ms.] Pierce saw an entirely different set of screens than the trial court considered." *Id.*

Oral argument was held before this Court on August 5, 2025. Following oral argument, on September 2, 2025, FloatMe filed an "Application to Correct Record or in the Alternative Consider Document in the Reproduced Record" with this Court. Therein, among other things, FloatMe explains that, "[a]t oral argument, a member of the panel inquired whether the [n]otice of [c]orrection and Amended Sanchez [A]ffidavit was part of the certified record transmitted

to this Court." Application to Correct, 9/2/25, at ¶ 18. After checking, FloatMe learned that the notice of correction, and the attached Amended Sanchez Affidavit, were not part of the certified record transmitted to this Court. *Id.*[2] FloatMe, therefore, requests that this Court issue an order (1) correcting the record pursuant to Pa.R.A.P. 1926 and directing that a supplemental record be certified and transmitted containing the February 19, 2025 notice of correction with attachments; or in the alternative, (2) ruling that the notice of correction with attachments may be considered part of the record in this appeal, as it is included in the reproduced record without objection and its accuracy has never been disputed. *Id.* at ¶ 19.

Ms. Pierce filed an answer to FloatMe's application. In her answer, *inter alia*, Ms. Pierce claims that FloatMe asks this Court "to consider evidence that FloatMe did not file until five months after FloatMe's preliminary objections were overruled, and that FloatMe did not properly ask to include in the record until twelve months after its preliminary objections were overruled." Ms. Pierce's Answer, 9/15/25, at 1 (emphasis omitted). Ms. Pierce asserts that Rule 1926 cannot be used to supplement the record with documents that the

---

[2] FloatMe also notes that neither the trial court, nor Ms. Pierce, had filed any response to the notice of correction in the trial court. Application to Correct at ¶ 7.

trial court did not consider, *id.* at 5, and that new evidence cannot be included in the reproduced record. *Id.* at 6-7.[3]

Before reaching the merits of FloatMe's appeal, we address FloatMe's application. To begin, we consider its argument pursuant to Rule 1926. Rule 1926 provides:

**Rule 1926. Correction or Modification of the Record**

(a) If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court after notice to the parties and opportunity for objection, and the record made to conform to the truth.

(b) If anything material to a party is omitted from the record by error, breakdown in processes of the court, or accident or is misstated therein, the omission or misstatement may be corrected by the following means:

(1) by the trial court or the appellate court upon application or on its own initiative at any time; in the event of correction or

---

[3] Ms. Pierce also explains that she did not respond to the notice of correction filed in the trial court because it was procedurally defective and because the trial court had already stayed the case at FloatMe's request when the notice was filed. *See* Ms. Pierce's Answer at 6 n.3 ("First, FloatMe's notice was procedurally defective. Rule 1926, by its plain language, allows a party to file an 'application' with the trial or appellate court requesting a correction or modification of the record. But FloatMe's notice was just that — a notice, not an application seeking relief or warranting a response…. Second, FloatMe filed its notice with the trial court in February 2025[,] even though the trial court has already stayed the case — *at FloatMe's request* — pending FloatMe's appeal[] in December 2024. [Ms.] Pierce had no duty to respond to a procedurally defective notice in a stayed case.") (citations omitted; some capitalization modified; emphasis in original). She also claims that she did not object to the inclusion of the Amended Sanchez Affidavit and its attachments in the reproduced record when it was being prepared by FloatMe because "there is no objection process built into the designation or reproduced record process." *Id.* at 8 (citing Pa.R.A.P. 2154).

modification by the trial court, that court shall direct that a supplemental record be certified and transmitted if necessary; or

(2) by the parties by stipulation filed in the trial court, in which case, if the trial court clerk has already certified the record, the parties shall file in the appellate court a copy of any stipulation filed pursuant to this rule, and the trial court clerk shall certify and transmit as a supplemental record the materials described in the stipulation.

(c) The trial court clerk shall transmit any supplemental record required by this rule within 14 days of the order or stipulation that requires it.

(d) All other questions as to the form and content of the record shall be presented to the appellate court.

Pa.R.A.P. 1926.

FloatMe says we should correct the record pursuant to Rule 1926(b)(1) because "correcting the record to include these materials, omitted from the record by 'accident' or 'error' would rightly serve the ends of justice and address a record issue a member of the panel raised at oral argument." **See** Application to Correct at ¶ 24. We disagree. "[W]hile Pa.R.A.P. 1926 permits appellate courts to correct omissions in the original record, such corrections must be directed to ensuring that the record truly discloses what occurred in the trial court." **Rost v. Ford Motor Co.**, 151 A.3d 1032, 1056 n.18 (Pa. 2016) (citation omitted); **see also id.** (noting that Pa.R.A.P. 1921 "generally limits the contents of the original record to items before the trial court at the time of decision"); **Commonwealth v. Luckett**, No. 987 MDA 2020, unpublished memorandum at 6 n.8 (Pa. Super. filed July 22, 2021), *abrogated on other grounds by* **Commonwealth v. Hardy**, 337 A.3d 385 (Pa. 2025) ("[Rule 1926] is a tool used to correct clerical errors, supplementing the record

- 13 -

with transcripts, trial court opinions, or other documents that should have been certified for our review but were mistakenly omitted. … We use Rule 1926 to correct omissions from the certified record of documents filed in the court below, not to allow parties to expand the record through the addition of new documents.") (citations omitted).[4]

Here, at the time of the trial court's ruling on the preliminary objections, the trial court was not presented with the Amended Sanchez Affidavit and corresponding screenshots. As Ms. Pierce points out, these items were filed months **after** the trial court issued its order. **See** Ms. Pierce's Answer at 4 n.2 ("FloatMe's evidence was not omitted by accident or error; it was omitted because it was not part of the record the trial court considered when overruling the preliminary objections."). Given that these documents were not before the trial court at the time it made its decision, we reject FloatMe's request to correct the record to include them pursuant to Rule 1926.[5]

---

[4] **See** Pa.R.A.P. 126(b) (providing that an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

[5] As recounted *supra*, Ms. Pierce argued in her memorandum of law in opposition to preliminary objections that the screenshots that FloatMe included in its preliminary objections were not the screenshots shown to her, thereby putting FloatMe on notice of a potential problem with the screenshots it attached. **See** Ms. Pierce's Memorandum of Law in Opposition at 6 n.2 ("**[T]he screens attached to FloatMe's current preliminary objections [to the amended complaint] cannot be the same screens [Ms.] Pierce would have seen when she signed up for FloatMe's app on July 8, 2022.** The screens attached to FloatMe's current preliminary objections are the same screens that were attached to FloatMe's original preliminary
*(Footnote Continued Next Page)*

We are also unconvinced by FloatMe's alternative argument that we should consider the notice of correction and its attachments because they are included in the reproduced record. We recognize that "[a]n appellate court may consider only the facts which have been duly certified in the record on appeal[,]" but "[w]here the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." **See** Pa.R.A.P. 1921, *Note*. While FloatMe argues for application of this exception, we also find it to be inapposite. This exception does not permit this Court to consider evidence that was **not** before the trial court at the time it rendered its decision. **See In re T.L.H.**, 336 A.3d 1069, 1080 n.16 (Pa. Super. 2025) (refusing to rely on items included in the reproduced record that were not before the trial court at the time it issued its decision); **see also Roth v. Columbia Dist. Co. of Allentown**, 89 A.2d 825, 829 (Pa. 1952) ("[O]rderly procedure requires that the action appealed from stand or fall on

_____

objections[ to the original complaint], but FloatMe omitted many of the screens in its original preliminary objections from its current preliminary objections. The omitted screens depict contracts with 'Last Revised' and 'Last Updated' dates of 'September 13, 2022.' FloatMe's screens therefore cannot depict FloatMe's app as it appeared when [Ms.] Pierce signed up on July 8, 2022.") (emphasis in original; citation omitted); **see also** Ms. Pierce's Brief at 7-8 ("[T]here is no evidence or testimony to prove that FloatMe's screenshots were shown to [Ms.] Pierce, or that the sign-up process portrayed by those screenshots was in effect when [Ms.] Pierce signed up for the FloatMe app. Although FloatMe claims [Ms.] Pierce signed up for its app on July 8, 2022, the screenshots FloatMe filed with its preliminary objections were part of a set of screenshots that referenced agreements that are dated 'September 13, 2022,' which means they did not apply to [Ms.] Pierce.") (citations omitted).

the record whereon the court below acted in entering the appealed order of decree."); *cf. Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (noting that the trial court granted the appellant's request to make evidence it deemed inadmissible, and other related evidence, part of the record for appellate review; when one of the pieces of evidence — a written plea colloquy — was not transmitted but contained in the reproduced record, the Court considered it because the accuracy of the reproduction was not disputed). Accordingly, for the above-stated reasons, we deny FloatMe's application.

While this disposition may seem harsh, given that FloatMe claims any differences between the affidavits and screenshots are minimal and immaterial, it would be a problematic precedent to allow a party to introduce materials on appeal that were not considered by the trial court at the time of its ruling. We also emphasize the importance of ensuring that the correct evidence is submitted to the trial court for review in the first place. We find this importance especially pronounced in internet arbitration cases. The enforceability of internet arbitration agreements can turn on details like the color, size, and positioning of a hyperlink, and when and how an internet user manifested assent during the sign-up process. *See generally* TCO. Further, we reiterate that Ms. Pierce reasonably raised concerns about the date of the

sign-up screens below and if they were in effect when she signed up, but FloatMe took no action to correct the record at that time. *See* note 5, *supra*.[6]

Having denied FloatMe's application, we are left to review the preliminary objections as they were filed below. Appellate review of "a claim that the trial court improperly overruled the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in overruling the preliminary objections." ***Humphrey v. GlaxoSmithKline PLC***, 263 A.3d 8, 13 (Pa. Super. 2021) (cleaned up). As FloatMe recognizes, "[i]n determining whether to compel arbitration, courts employ a two-part test: (1) whether a valid agreement to arbitrate exists; and (2) whether the dispute is within the scope of the agreement." FloatMe's Amended Brief at 4 (citing ***Carvell v. Edward D. Jones & Co., L.P.***, 294 A.3d 1221, 1230 (Pa. Super. 2023)). "The existence of an agreement and whether a dispute is within the scope of the agreement are questions of law and our review is plenary." ***Warwick Tp. Water and Sewer Auth. v. Boucher & James, Inc.***, 851 A.2d 953, 955 (Pa. Super. 2004) (citation omitted).

Our focus is on the first part of the test — whether a valid agreement to arbitrate exists. In its preliminary objections, FloatMe relied on the Sanchez

---

[6] We point out that, usually, the internet user will not possess the screens showing the applicable sign-up process, and therefore key evidence as to whether a valid contract was formed will only be in the hands of the other party.

Affidavit, and the screenshots attached to it, to support its claim that Ms. Pierce had notice of the Terms and Conditions containing an arbitration provision, and that she agreed to them by continuing through the sign-up process and obtaining an advance. Ms. Pierce, however, urges us to affirm the trial court's ruling "because the screenshots the trial court considered were not shown to [Ms.] Pierce, which means there was no evidence from which the trial court could have decided that [Ms.] Pierce agreed to arbitration." Ms. Pierce's Brief at 15. We are persuaded by Ms. Pierce's argument. In litigating the preliminary objections before the trial court, FloatMe failed to provide evidence of what the screens looked like when Ms. Pierce signed up for FloatMe's services. **See** FloatMe's Reply Brief at 19 (acknowledging that FloatMe has the "evidentiary burden to prove the existence of an enforceable arbitration agreement"). FloatMe itself recognizes that these screens are germane to the question of whether a valid contract was formed under either Pennsylvania or Texas law. **See** FloatMe's Amended Brief at 21-35; FloatMe's Reply Brief at 8-18. Because FloatMe did not include proper evidence in the Sanchez Affidavit and its attachments pertaining to the screens Ms. Pierce viewed on the day she signed up, as Ms. Pierce argued below in opposition to the preliminary objections, we affirm the trial court's order overruling FloatMe's preliminary objections.[7]

---

[7] "[I]t is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record." **Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare**, 299 A.3d 937, 957 n.14 (Pa. Super. 2023) (citation omitted).

Notwithstanding, even if we considered FloatMe's argument based on either the Sanchez or Amended Sanchez Affidavit and the screenshots attached to them, we would be unconvinced that relief is due. Initially, FloatMe fails to demonstrate that Texas law should apply. FloatMe contends that Texas law applies because it is called for in the Terms of Service. FloatMe's Amended Brief at 2, 17-18. Ms. Pierce, however, makes various arguments as to why Texas law should not apply, including that courts cannot apply contractual choice-of-law clauses before determining that a contract exists. Ms. Pierce's Brief at 25-26. FloatMe does not respond to this argument in its reply brief, and we decline to develop an argument on FloatMe's behalf. **Commonwealth v. Armolt**, 294 A.3d 364, 377 (Pa. 2023) ("It is not the obligation of an appellate court to formulate an appellant's arguments for him.") (cleaned up). Accordingly, FloatMe has not shown that Texas law should apply.

We therefore turn to Pennsylvania law. In overruling FloatMe's preliminary objections, the trial court relied on **Chilutti**. In **Chilutti**, upon considering whether the internet users in that case were bound by an arbitration provision contained in a 'terms and conditions' hyperlink, the *en banc* Court examined whether "(1) the website provided reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer took some action, such as clicking a button or checking a box, that unambiguously manifested his or her assent to those terms." **Chilutti**,

300 A.3d at 446 (cleaned up). In considering the second part of this test, the Court opined

> the matter now turns on whether [the internet users] took any action that unambiguously manifested their assent to be bound by the terms and conditions. … Here, the text did include language like "By clicking 'Create Account,' you agree to [the company's] Terms and Conditions" and "By tapping the arrow below, you agree to [the company's] Term of Use[.]"
>
> However, … because the constitutional right to a jury trial should be afforded the greatest protection under the courts of this Commonwealth, we conclude … a stricter burden of proof is necessary to demonstrate a party's unambiguous manifestation of assent to arbitration. This is accomplished by the following: (1) explicitly stating on the registration websites and application screens that a consumer is waiving a right to a jury trial when they agree to the company's "terms and conditions," and the registration process cannot be completed until the consumer is fully informed of that waiver; and (2) when the agreements are available for viewing after a user has clicked on the hyperlink, the waiver should not be hidden in the "terms and conditions" provision but should appear at the top of the first page in bold, capitalized text.

*Id.* at 449-50 (footnote and some citations omitted; some brackets added).

Here, at a minimum, FloatMe has failed to demonstrate that either set of app screens explicitly stated during the sign-up process that Ms. Pierce was waiving a right to a jury trial by agreeing to FloatMe's Terms and Conditions. Instead, FloatMe respectfully argues that *Chilutti* contravenes the FAA, and notes that our Supreme Court has agreed to review it.[8] While we recognize that *Chilutti* was argued before our Supreme Court on September 9, 2025, a

---

[8] In *Chilutti*, the *en banc* Court determined that "the FAA is not pertinent because the parties never agreed to arbitrate at the outset." *Chilutti*, 300 A.3d at 450 n.26.

decision has not yet been issued. We therefore remain bound by the *en banc* Court's **Chilutti** decision. **Marks v. Nationwide Ins. Co.**, 762 A.2d 1098, 1101 (Pa. Super. 2000) ("[W]e have long held that as long as the decision has not been overturned by our Supreme Court, a decision by our Court remains binding precedent.") (citation omitted). As FloatMe has not shown that it met the strict burden set forth by our *en banc* Court in **Chilutti**, we would conclude that Ms. Pierce should not be compelled to arbitrate her claims, regardless of whether the Sanchez Affidavit or Amended Sanchez Affidavit is considered.

Order affirmed. "Application to Correct Record or Alternatively to Consider Document in Reproduced Record" denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

11/4/2025